UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ROBERT and SHERRY HOWELL | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 1:14-CV-148 SNLJ |
| | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES, LLC | ) |
| | ) |
|     Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Equifax Information Services, LLC's motion for summary judgment [#53]. Equifax moves this Court for an order granting summary judgment on all claims asserted by the plaintiffs, Robert Howell and Sherry Howell. The matter is ripe for disposition. For the following reasons, the motion will be granted in part, and denied in part.

**I.**     **Procedural Background**

Plaintiffs claim that Equifax violated their rights by willfully and negligently failing to comply with the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, and were injured as a result. It is undisputed that Equifax is a credit reporting agency ("CRA") under the FCRA, meaning that Equifax collects credit information furnished to them by other sources and creates consumer disclosures and reports to sell to creditors. Hongkong and Shanghai Banking Corporation ("HSBC") provided Equifax with credit information that resulted in Mr. Howell being labeled as deceased on his Equifax credit

report, when in fact Mr. Howell was and remains very much alive. Plaintiffs argue that the furnishing of inaccurate information that was given to creditors led to two credit denials for Mr. Howell and that the inaccurate information remained on his account for months after he disputed the deceased notation.

Equifax moves for summary judgment on the following grounds:

1. Mrs. Howell's claim fail as a matter of law because Equifax did not report any inaccurate information about her.

2. Mr. Howell's FCRA claim under § 1681i fails because he lacks proof that he contacted Equifax to dispute the HSBC account.

3. Mr. Howell's FCRA claim under § 1681e fails because he cannot show that Equifax failed to maintain reasonable procedures to assure the accuracy of his credit report.

4. Alternatively, the FCRA claims fail because the plaintiffs cannot show that they sustained actual damages and cannot prove any alleged violation caused the damages.

5. Finally, that plaintiffs cannot meet their burden under § 1681n of the FCRA to show that Equifax acted willfully.

**II.     Factual Background**

Viewed in the light most favorable to plaintiffs, the relevant facts are as follows. Plaintiffs found their "dream house" and applied for mortgage financing with Bank Star of the Bootheel in January 2013. It appears, however, that the actual application was made by Mr. Howell only, and in fact, Mrs. Howell testified in her deposition that "I don't think I applied for anything." In any event, soon after Mr. Howell met with bank loan officer Erica Prater, she communicated to Mr. Howell that his Equifax credit report contained a notation that he was deceased and that because of this deceased notation, the

bank could not allow the mortgage process to go any further until the problem was resolved.[1] Ms. Prater, in her affidavit, stated that she personally called Equifax to aid Mr. Howell in resolving the issue and then followed Equifax's instructions to dispute the deceased notation by faxing Equifax a letter on Bank Star of the Bootheel letterhead signed by Mr. Howell and notarized. Mr. Howell claims that he again disputed the deceased notation via phone, fax, and internet, contacting Equifax approximately 10 different times between January 2013 and April 2013. Ms. Prater further stated that Mr. Howell was ultimately unable to secure financing for his mortgage because of this deceased notation.

In addition, Equifax's internal records indicate that between January 2013 and August 9, 2013, the inaccurate deceased notation from the HSBC credit line remained on Mr. Howell's credit report and was released at least 13 times to creditors during that period.[2] Finally, Mr. Howell asserts that he was denied financing to purchase a new vehicle approximately eighteen months after he first disputed the deceased notation because the notation remained on his credit report.

### III. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter

---

[1] There were several other errors within Mr. Howell's credit report. These included an incorrect past address, an incorrect name, and an incorrect date of birth. Pl. Resp. Int. #4.
[2] Only one credit line, HSBC, out of 32 credit lines on his credit report, indicated that Mr. Howell was deceased.

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A factual issue is "genuine" when there is sufficient evidence that would allow a trier of fact to rule in favor of the non-movant and a factual issue is "material" when the resolution might affect the outcome of the suit. *Id.* at 248. The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). Summary judgment is an "extreme remedy," that should be denied unless the movant has "established his right to judgment with such clarity as to leave no room for controversy," and that the non-moving party is "not entitled to recover under any possible circumstances." *Fahey v. Experian Information Solutions, Inc.*, 571 F.Supp.2d 1082, 1087 (E.D. Mo. 2008) (quoting *New England Mutual Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977)).

**IV. Fair Credit Reporting Act ("FCRA")**

In their complaint against Equifax, plaintiffs allege that Equifax violated two separate duties of care imposed by Congress on credit reporting agencies under the FCRA by negligently and willfully violating 15 U.S.C. §§ 1681e(b) and 1681i of the FCRA. Section 1681e(b) requires that whenever a CRA prepares a consumer report, "it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Section 1681i(a)(1)(A) requires that whenever a consumer disputes the completeness or accuracy of any item within the consumer's file at a CRA and notifies the CRA of the problem, the CRA must conduct a reasonable reinvestigation into the matter to determine if the information is inaccurate. To enforce these provisions, the Act created a private right of action against CRAs for willful noncompliance (15 U.S.C. § 1681n) and for negligent noncompliance (15 U.S.C. § 1681o) with the duties imposed by the Act.

The FCRA is not a strict liability statute and does not require error-free credit reports. *See Hauser v. Equifax, Inc.*, 602 F.2d 811, 814 (8th Cir. 1979). However, it does require reasonable procedures to ensure maximum possible accuracy. Additionally, "[a]ccurate reporting is a complete defense to both a 1681e(b) claim and a 1681i claim." *Fahey*, 571 F.Supp.2d at 1088. (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1160 (11th Cir. 1991)).

**V.   Discussion**

**A. Mrs. Howell's Claims**

Equifax moves for summary judgment as to Mrs. Howell's claims under the FCRA, arguing that Equifax did not report anything inaccurate in any of her credit

reports, and therefore Mrs. Howell has no claim against Equifax. Plaintiffs argue that "it has long been recognized that a wife has standing to sue where a *joint application* for credit is denied based on allegedly inaccurate information contained in her husband's credit report." Although legally correct, plaintiffs' argument misses the mark in regards to Mrs. Howell. In Mrs. Howell's deposition, she acknowledged that Equifax never issued any credit reports with inaccurate credit information about her. And, as noted, in response to the question "Have you ever been denied credit because [Mr. Howell] was reported as deceased," she stated, "No. I don't think I have applied for anything." There is no additional evidence on the record that Mr. and Mrs. Howell jointly applied for mortgage financing with Bank Star of the Bootheel. Because there is no genuine issue of material fact as to this issue, defendant is entitled to judgment as a matter of law.

**B. Mr. Howell's § 1681i Claim**

If a consumer disputes allegedly inaccurate information within the consumer's credit report, then the agency is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). The reasonable reinvestigation requirement is only activated when the consumer notifies the CRA of the inaccurate information. Once the information is disputed, "[t]he determination of the 'reasonableness' of the defendant's procedures [of the reinvestigation] is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the procedures is beyond question." *Murphy v. Midland Credit*

*Management, Inc.*, 456 F.Supp.2d 1082, 1090 (E.D. Mo. 2006) (citing *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)). When the facts are disputed, reasonableness is "uniquely a question for a jury." *Murphy*, 456 F.Supp.2d at 1091.

Equifax argues that summary judgment is proper on this issue because Mr. Howell lacks proof that he contacted Equifax to dispute the deceased notation. In support, Equifax points to the lack of corroborating evidence by Mr. Howell of his alleged contacts with Equifax and that Equifax has no records of any dispute or contact by Mr. Howell himself. In response, Mr. Howell, in addition to his own deposition and interrogatory answers, submitted Ms. Prater's affidavit showing that, at a minimum, she disputed the deceased notation with a notarized letter containing Mr. Howell's signature, per Equifax's telephone instructions to her. Accordingly, summary judgment in favor of Equifax is not proper at this time.

**C. Mr. Howell's § 1681e Claim**

Although not a strict liability statute, 15 U.S.C. § 1681e(b) requires that whenever a consumer reporting agency prepares a consumer report it shall follow "reasonable procedures" to assure "maximum possible accuracy" of the information concerning the individual about whom the report relates. However, a CRA is not liable for reporting information from records of financial institutions unless the CRA has notice that the furnisher of information is unreliable or that another type of systematic problem exists, unless "[the CRA] has prior notice from the *consumer* that the information might be inaccurate." Murphy, 456 F. Supp. 2d at 1089 (citing *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004)) (emphasis added).

7

Plaintiff argues that § 1681e(b) was violated because the deceased notation within his credit report was inaccurate and was released to creditors. Equifax counters that Mr. Howell cannot establish that Equifax's policies and procedures for maintaining accuracy were unreasonable. In support, Equifax produced its policies and procedures for maintaining accuracy through its vetting procedures for credit furnishing companies. Despite these policies and procedures, though, Equifax was on notice, at least from the time it was contacted by Ms. Prater, that the deceased notation was inaccurate. From that point on, it is a jury question whether Equifax did or did not employ reasonable procedures to assure maximum possible accuracy of the information within Mr. Howell's credit report.

### D. Mr. Howell's Damages and Causation

#### 1. Damages

Under 15 U.S.C. § 1681*o*(a)(1), Mr. Howell may recover for any actual damages, costs, and attorney fees that he sustained as a result of Equifax's alleged negligent noncompliance with the requirements of the FCRA. *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013). Mr. Howell has submitted sufficient evidence of actual damages in the nature of economic damages simply because he was denied financing on the purchase for the home and the automobile. However, he also seeks damages for emotional distress. Mental pain and anxiety can constitute actual damages but must be supported by competent evidence of "genuine injury," which may be "evidenced by one's conduct and observed by others." *Id.* (citing *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834-35 (8th Cir. 1976); *See also Carey v. Piphus*, 435 U.S. 247, 264 n. 20

(1978). "Acceptable evidence of a genuine injury includes witness corroboration of any outward manifestation of emotional distress." *Fahey*, 571 F.Supp.2d at 1090. Mr. Howell's evidence fails to meet these standards. He presents no specific facts showing outward acts of emotional distress nor any witness corroboration of those acts. Mere conclusory allegations that his reputation was tarnished or that he suffered fear, aggravation, or distress, with no corroborating testimony by others, will not suffice. Because Mr. Howell fails to provide specific facts establishing genuine injury of emotional distress, summary judgment is granted as to that element of damages.

    **2. Causation**

Mr. Howell, in addition to proving damages, must establish that Equifax's alleged FCRA violations caused his damages, and to survive summary judgment, he has the burden of proving that the inaccuracy within his credit report was a causal factor in his ability to secure financing. *Fahey*, 571 F. Supp. 2d at 1089 (internal citations omitted). However, Mr. Howell is required only to show that the inaccuracy within the report was "a substantial factor in bringing about the denial of credit" rather than eliminating the possibility that other factors may also have influenced the credit denial. *Id.*

Equifax argues that it cannot be held liable under the FCRA because Mr. Howell has produced no evidence of causation. To the contrary, Mr. Howell produced Ms. Prater's affidavit that indicates that the Bank Star of the Bootheel would not go further with the mortgage process because of the deceased notation. According to the affidavit of the bank's loan officer, Ms. Prater, "[d]espite Mr. Howell's efforts to dispute the deceased notations, and my efforts as well, the false information was not removed from

9

Mr. Howell's Equifax credit report. As a result, Bank Star of the Bootheel was unable to secure financing for Mr. Howell for the house . . . [Mr. Howell] ultimately lost out on the opportunity to purchase the house . . . because the financing fell through." This evidence is adequate to meet Mr. Howell's burden.

However, summary judgment is granted for Equifax as to Mr. Howell's claim for the alleged violation of the FCRA stemming from a vehicle financing denial. There is no admissible evidence on the record that Mr. Howell was denied financing for a vehicle purchase because of the false information on his credit report. No denial letter or affidavit of any dealership employee was produced. Mr. Howell presents only his own deposition testimony and interrogatory answer that an employee of the dealership told him that he was denied because of the deceased notation. Unfortunately, this evidence is hearsay and would ultimately not be admissible. Although Mr. Howell identified a potential witness in his interrogatory answer who is an employee at the dealership, Mr. Howell did not depose this employee or obtain an affidavit from this employee regarding the denial of credit. As a result, Mr. Howell failed to prove causation.

### E. Willful Noncompliance

Mr. Howell may recover statutory and punitive damages under 15 U.S.C. § 1681n(a)(1)(A) if Equifax willfully violated the FCRA. *Starkey v. Experian Information Solutions, Inc.*, 32 F.Supp.3d 1105, 1111 (C.D. Cal. 2014); see also *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998). A willful violation includes both knowing violations as well as actions in "reckless disregard of a requirement" of the FCRA. *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-58 (2007)). An action is reckless

if it involves an "unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am.*, 551 U.S. at 68. A company subject to the FCRA "does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

When a consumer repeatedly disputes information on their credit report and a CRA repeatedly fails to do anything, or repeats the same response unchangingly to no avail, a plaintiff may survive summary judgment as to a 15 U.S.C. §1681n claim. *See Murphy*, 456 F.Supp.2d at 1095-96. In the case at hand, Mr. Howell claims that he contacted Equifax over 10 times to dispute the deceased notation on his credit report and Equifax didn't remove it until the start of this litigation. This was in addition to the letter signed by Mr. Howell and submitted by Ms. Prater complaining of the error. Under the circumstances, a jury could find that Equifax willfully failed to follow reasonable steps to correct Mr. Howell's credit report and willfully failed to follow reasonable procedures to maintain maximum possible accuracy of Mr. Howell's credit report.

## VI. Conclusion

Summary judgment is granted in favor of the defendant only as to (1) Mrs. Howell's claims in their entirety, (2) Mr. Howell's emotional distress damages due to lack of evidence of genuine injury, and (3) Mr. Howell's claim for damages stemming from a vehicle financing denial due to lack of evidence of causation. Summary judgment is denied in all other regards.

Accordingly,

**IT IS HEREBY ORDERED** that Equifax's motion for summary judgment (#53) is **GRANTED** in part and **DENIED** in part.

So ordered this 9th day of January, 2017.

                                                                               STEPHEN N. LIMBAUGH, JR.
                                                                               UNITED STATES DISTRICT JUDGE